**UNITED STATES of America,**
**Plaintiff–Appellant,**

v.

**Alejandro PACHECO–OSUNA,**
**Defendant–Appellee.**

No. 93–50199.

United States Court of Appeals,
Ninth Circuit.

Submitted * April 6, 1994.

Decided May 2, 1994.

---

* The panel finds this case appropriate for submission without oral argument pursuant to 9th    Cir.R. 34–4 and Fed.R.App.P. 34(a).

Alberto A. Arevalo, Asst. U.S. Atty., San Diego, CA, for plaintiff-appellant.

Gretchen C. von Helms, Federal Defenders of San Diego, Inc., San Diego, CA, for defendant-appellee.

Before: HALL, LEAVY, and FERNANDEZ, Circuit Judges.

Opinion by Judge FERNANDEZ.

FERNANDEZ, Circuit Judge:

Alejandro Pacheco–Osuna pled guilty to being a deported alien found in the United States. *See* 8 U.S.C. § 1326(a). At sentencing, the district court departed downward because, as it said, when Pacheco was arrested he may have been stopped without good cause. The United States appealed that departure. We vacate the sentence and remand.

## BACKGROUND

Pacheco was deported from this country in July of 1992. In August of 1992, he was apprehended by police from the City of Santa Fe, California, on a charge of trespassing. Pacheco did not speak English, so the police contacted the United States Border Patrol for assistance in interpreting. When it was determined that Pacheco was an alien who was improperly in the country, the police turned him over to the border patrol agents.

Thereafter, Pacheco was indicted for the crime of being a deported alien who was found in the United States. He pled guilty pursuant to a plea agreement with the government. That agreement provided that if his sentence was over 21 months he could appeal, but that he otherwise waived his right to do so.

At sentencing, Pacheco argued that he should be given a downward departure because his arrest may not have been valid and may have been simply because he was Hispanic-looking. The only evidence of that was the State of California's failure to prosecute him for trespassing when the United States decided to prosecute him for his felonious entry into this country. Nothing in the presentence report added to the factual presentation, but the district court agreed. It said the government might have a proof problem, for "[t]he situation may be that he may have been stopped because he was Mexican looking, rather than good cause. So I'll make a departure for that reason."

The government was disturbed by what it saw as a baseless assertion of police wrongdoing and by the fact of the departure, whether there was wrongdoing or not. It therefore appealed and claimed that there was no legal basis to depart, but even if there were, there was no factual basis and the amount of the departure was unexplained. The maximum sentence possible under 8 U.S.C. § 1326(a) was 24 months. Before departure, the Guideline range was 24 to 30 months. Pacheco was sentenced to 21 months. We agree with the first ground and need not decide the last two.

## JURISDICTION AND STANDARD OF REVIEW

A. *Standard of Review.*

■ When the district court departs, the first step in our review of the departure is to determine whether the court had the legal authority so to do. *United States v. Lira–Barraza,* 941 F.2d 745, 746 (9th Cir.1991) (en banc). Because, as we will show, this departure trips on the first step, we need go no further.

B. *Jurisdiction.*

■ The district court had jurisdiction pursuant to 18 U.S.C. § 3231. In general, we have jurisdiction pursuant to 18 U.S.C. § 3742(b). However, Pacheco claims that we should eschew jurisdiction because the government has waived its right to appeal. We do not agree.

"Although the plea bargain is a matter of criminal jurisprudence, a plea bargain is contractual in nature and is measured by contract-law standards." *United States v. Read,* 778 F.2d 1437, 1441 (9th Cir.1985), *cert. denied,* 479 U.S. 835, 107 S.Ct. 131, 93 L.Ed.2d 75 (1986). Using an objective standard, we must determine "what the parties to this plea bargain reasonably understood to be the terms of the agreement." *Id.* (internal quotation omitted). "The government will be held to the literal terms of the agreement." *Id.* (internal quotations omitted). Section 8 of the plea agreement provides:

> 8. Defendant is aware that he has a right of appeal under 18 U.S.C. § 3742(a). The defendant expressly waives his right to appeal all sentencing issues based on such statute and any other grounds if the Court does not impose a period of imprisonment greater than 21 months. The Government reserves the right to support on appeal any sentence that the sentencing judge imposes irrespective of Section 4 of this plea agreement.

From this paragraph, Pacheco asserts that there is an implicit agreement that the government itself cannot appeal his sentence but can only defend if Pacheco appeals. We see no such implicit agreement.

The section relates to Pacheco's right to appeal but also makes it clear that even though section 4 spelled out an agreement that certain guidelines would apply in a certain way, the government could support the district court's sentence if the court did not agree. Sections 5 and 6 of the agreement reserve the right of the district court to disagree. Thus, the last sentence of section 8 simply underscores the fact that the government need not stand mute on appeal. In that respect, it avoided an issue that we have been required to wrestle with in the past. *See United States v. Howard,* 894 F.2d 1085, 1090–91 (9th Cir.1990). While *Howard* would support government participation, even without the last sentence of section 8, it is always wise to avoid leaving that kind of question to the vicissitudes of afterthought and litigation. It is also fair to let the defendant know where he stands.

Nothing else in the plea agreement even remotely indicates that the government was giving up its right to appeal. But, says Pacheco, because the agreement refers to a 21–month sentence, he should be able to rely upon parol evidence—the statement of his attorney—to demonstrate that the government did waive its right to appeal if he received a 21–month sentence, which he did.

However, we have previously eschewed the invitation to consider parol evidence for the purpose of adding terms to or changing the terms of an integrated plea agreement. *See United States v. Floyd,* 1 F.3d 867, 870 (9th Cir.1993). We see no reason to embrace that invitation in this case, which also involves an integrated plea agreement. That is particularly true where, as here, Pacheco's "evidence" consists solely of representations by his attorney that there was an agreement to a 21–month sentence, but opposing counsel adamantly represented to the court that the contrary was true.

In fine, we see no indication that the government has waived its right to appeal. That being so, we hold that it did not. *See United States v. Anderson,* 921 F.2d 335, 337–38 (1st Cir.1990); *cf. United States v. Gerace,* 997 F.2d 1293, 1294–95 (9th Cir.1993); *United States v. Clark,* 781 F.2d 730, 732 (9th Cir. 1986).

## DISCUSSION

■ The district court's reason for departing amounts to granting a departure because there may have been a violation of the Fourth Amendment to the United States Constitution. We recognize that a court may depart downward when there exists a "mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). Of course, it may do so only if the circumstance upon which it seeks to base its departure "is consistent with the sentencing factors prescribed by Congress. . . ." *Lira–Barraza,* 941 F.2d at 746.

Nothing in the congressionally prescribed sentencing factors refers to deterrence of

constitutional violations by governmental agents. The list of factors relevant to sentencing includes the nature and seriousness of the offense, deterrence of criminal conduct, protection of the public from further crimes by the defendant, correctional treatment of the defendant, the history and characteristics of the defendant, and the need to avoid unwarranted sentence disparities. 18 U.S.C. § 3553(a). All of these key on the defendant and his culpability, not on some alleged wrongdoing committed in catching him.

We have previously had occasion to comment on the kind of argument Pacheco now makes. In *United States v. Crippen*, 961 F.2d 882 (9th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 438, 121 L.Ed.2d 358 (1992), the defendant asked for a departure because his counsel had been ineffective in a related state proceeding. We said:

> Although § 3553(b) does not define the term "aggravating or mitigating circumstance," the term does suggest that a factor constitutes a permissible basis for departure only if it speaks to the culpability of the defendant or the severity of the offense, or if it is otherwise related to some other congressionally-authorized legitimate sentencing concern.

*Id.* at 884. We then went on to point out that a defendant's receipt of ineffective assistance did not make his federal crime any less serious. Departure was not warranted. *See also United States v. Alvarez–Cardenas*, 902 F.2d 734, 737 (9th Cir.1990) (the possibility of deportation could not be used to depart downward; it did not speak to the offense or to the offender's character).

Similarly, in *United States v. Williams*, 978 F.2d 1133, 1136 (9th Cir.1992), *cert. denied*, — U.S. —, 113 S.Ct. 1606, 123 L.Ed.2d 168 (1993), we declined to approve of a departure based upon a claim that the government should be punished for the misconduct of one of its agents—perjury before the grand jury. We said that "the only purpose of a departure would be to deter government misconduct, a purpose having no relation to goals of the Sentencing Reform Act." *Id.*

However, Pacheco points to the fact that a defendant might be subjected to an upward departure when he violates the constitutional rights of his victim. *See United States v. McAninch*, 994 F.2d 1380, 1387–89 (9th Cir.) (upward departure proper where the defendant harassed his victims because of their supposed interracial marriages), *cert. denied*, — U.S. —, 114 S.Ct. 394, 126 L.Ed.2d 342 (1993). So, he reasons, he should be entitled to a downward departure when his constitutional rights may have been violated. In making that argument, Pacheco misapprehends the basis of our decision in *McAninch*. The departure in that case was directly related to the defendant's own culpability—his hateful actions prompted by a hateful state of mind. The alleged constitutional violation in this case has nothing at all to do with Pacheco's culpable reentry into this country after he was deported. It only has to do with his quick apprehension for that crime.

Evidencing a still further misapprehension of the legal principles involved, Pacheco points to the fact that if the government has engaged in misconduct of an entrapping nature, a departure may be warranted, even though a complete defense of entrapment may not be possible. *See United States v. Garza–Juarez*, 992 F.2d 896, 910–13 (9th Cir. 1993) (downward departure appropriate even if government entrapment activities were not sufficient to warrant an acquittal), *cert. denied*, — U.S. —, 114 S.Ct. 724, 126 L.Ed.2d 688 (1994); *cf. United States v. Takai*, 941 F.2d 738, 744 (9th Cir.1991) (government agents' deception, though not entrapment, could be a factor in deciding if conduct was aberrant); *but see United States v. Dickey*, 924 F.2d 836, 839 (9th Cir.) (when defendant pled guilty, entrapment could not be used as a mitigating factor), *cert. denied*, — U.S. —, 112 S.Ct. 383, 116 L.Ed.2d 334 (1991). What Pacheco overlooks is the fact that entrapment, and issues like it, can cast light upon a defendant's culpability. Those issues tend to show that the defendant did not have a criminal predisposition and tend to show that he was induced into his wrongdoing by the blandishments of the government and its agents. That argument carries no weight in this case. Pacheco came back

on his own; his culpability is all his own. It is not mitigated by anything governmental agents did.

Therefore, the district court erred when it departed because Pacheco's arrest may have been improper.

## CONCLUSION

The district court believed that Pacheco was entitled to a slight departure from the Guidelines, so it departed to three months below the maximum sentence prescribed by law for his offense. The reason it gave for doing so was that Pacheco might have been subjected to an illegal arrest, a factor entirely unrelated to Pacheco's crime (entry after deportation) or to his criminal history (Category VI).

In that the district court erred. Even if the stop of Pacheco had not been proper, that was not related to his culpability or to the severity of his offense. Sentencing is not designed to punish, deter or educate errant government officials; it is designed to punish, deter and educate defendants.

VACATED and REMANDED.