59 F.3d 177
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Kenneth Lamont PAULK, Defendant-Appellant.
 No. 94-50085.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 9, 1995.
Decided June 19, 1995.
 
 1
 Before: FLETCHER, WIGGINS, and FERNANDEZ, Circuit Judges
 
 
 2
 MEMORANDUM*
 
 
 3
 Kenneth Lamont Paulk appeals his sentence for possessing with the intent to distribute cocaine base ("crack"). We have jurisdiction, and we affirm.
 
 FACTS
 
 4
 Pursuant to an agreement with the government, Paulk pled guilty to both counts of a two-count indictment charging him with possessing with intent to distribute approximately 255.59 grams of crack in violation of 21 U.S.C. Sec. 841(a)(1) and carrying a firearm in relation to a narcotics offense in violation of 18 U.S.C. Sec. 924(c). Because Paulk had a prior state felony drug conviction, 21 U.S.C. Sec. 841(b)(1) called for a mandatory minimum sentence of twenty years in prison for possessing with the intent to distribute more than 50 grams of crack. The presentence report prepared by the Probation Office recommended this statutory mandatory minimum sentence, plus a mandatory five-year consecutive sentence for the firearm charge, resulting in a recommended sentence of twenty-five years in prison. The district court imposed the recommended sentence, and Paulk appeals.
 
 DISCUSSION
 
 5
 Paulk, who is African-American, argues that the mandatory minimum sentence under section 841(b) for crack-related offenses violates the equal protection component of the Fifth Amendment. The statute employs what has been called the "100:1" ratio for sentencing crack, versus powder cocaine, offenders. For example, a first-time offender convicted of a narcotics offense involving 50 grams or more of crack faces a ten-year mandatory minimum sentence. 21 U.S.C. Sec. 841(b)(1)(A)(iii). The same ten-year sentence applies to a defendant convicted of a cocaine powder offense only if the offense involved at least 5,000 grams of cocaine powder. Id. Sec. 841(b)(1)(A)(ii)(II).
 
 
 6
 We have repeatedly upheld against equal protection challenges section 841(b)(1)'s distinction between crack and powder cocaine offenses. United States v. Davis, 36 F.3d 1424, 1437 (9th Cir. 1994); United States v. Coleman, 24 F.3d 37, 38-39 (9th Cir. 1994), cert. denied, U.S. , 115 S.Ct. 261 (1994); United States v. Williams, 978 F.2d 1133, 1136 (9th Cir. 1992), cert. denied, U.S. , 113 S.Ct. 1606 (1993); United States v. Harding, 971 F.2d 410, 412 (9th Cir. 1992), cert. denied, U.S. , 113 S.Ct. 1025 (1993). In these cases, we applied the rational basis test because the distinction between crack and powder cocaine does not disadvantage a suspect class or impinge upon the exercise of a fundamental right. See Coleman, 24 F.3d at 38-39; Harding, 971 F.2d at 412.
 
 
 7
 Paulk argues that we should apply strict scrutiny review because Congress intentionally discriminated on the basis of race in enacting section 841(b)(1). We do not address this argument, however, because Paulk failed to raise it in the district court. See Jovanovich v. United States, 813 F.2d 1035, 1037 (9th Cir. 1987) (issues not presented to the district court generally cannot be raised for the first time on appeal).
 
 
 8
 At sentencing, Paulk objected to his sentence on the ground "that the burden of prosecution and sentences for crack cocaine falls disproportionately on African Americans." The only evidence submitted by Paulk to support his claim was a newspaper article describing a study which purported to find that federal prosecutors were targeting African-American and Latino crack dealers for federal prosecution. Paulk did not argue that Congress enacted 841(b)(1) for the purpose of discriminating against African-Americans. In fact, Paulk's attorney conceded that Congress probably did not have such an intent, stating, "I don't think [Congress] sat down and targeted a particular segment of our heritage.... I agree with the court [that there is no indication of discriminatory intent]."
 
 
 9
 In arguing for the first time on appeal that Congress enacted section 841(b)(1) for the purpose of discriminating against African-Americans who commit cocaine-related offenses, Paulk relies in part on testimony gathered by the district court in United States v. Clary, 846 F. Supp. 768 (E.D. Mo. 1994), rev'd, 34 F.3d 709, 713 (8th Cir. 1994). This and other evidence relied on by Paulk was not, however, presented to the district court and, therefore, is not a part of the record in this case. Thus, Paulk's equal protection claim is identical to those we have rejected repeatedly; he "offers no statistical evidence of disparate impact" and "has adduced no evidence of [Congress's] discriminatory intent or purpose." See Coleman, 24 F.3d at 38-39.
 
 
 10
 Accordingly, we uphold section 841(b)(1) as "rationally related to a legitimate [government] interest." Harding, 971 F.2d at 412 (quoting City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 440 (1985) (citations omitted)); see Harding, 971 F.2d at 413 ("The distinction between crack and powder cocaine is neither arbitrary nor irrational").
 
 
 11
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3